In re ART SHIRT LTD., INC. (Jointly Administered With the Cracker Barrel Dresses, Ltd. Bankruptcy No. 80–03429K Richard Todd, Inc. Bankruptcy No. 80–03430K), Debtor.

Louis W. FRYMAN, Esquire, Trustee of Art Shirt Ltd., Inc., Plaintiff,

v.

SIM TEXTILE CO., Paramount Trimming, Bellcraft Button Co., Trims For Now, Inc., Packaging Systems Corp., Formfit Hanger Co., William Iselin & Co., Phila. Binding & Trimming Corp., U.S. Packaging & Design, Pa. Unemployment, Super Notion Co., Inc., Century Factors, Gold Bug, Armstrong, Barclay Commercial, Kalow & Bass, Charles Ruser, Seco Assoc., Richard B. Schiro Clair Insurance (Century Factors Factor for Carna Mills Defendant No. 12).

Louis W. FRYMAN, Esq. Trustee of Art Shirt Ltd., Inc., Plaintiff,

v.

LOWENSTEIN CORPORATION, Crocker United, Manufacturer Hanover Trust, Cranston Print Works, Congress Factors, Century Factors, Blue Bell, Inc., Chemical Bank & Factoring, West Point Pepperal, McGuire Co., Meinhard Comm. Corp., Fay's Closet, Henry Glass, Globe Superior, Republic Factors Corp., Pictures Frocks, J.P. Stevens Co. (Century Factors Factor for New Wave Defendant No. 8).

Bankruptcy No. 80–03418K.
Adv. Nos. 82–2340K(12), 82–2341K(8).

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 23, 1986.

As Amended Jan. 30, 1987.

Leon S. Forman, David L. Braverman, Philadelphia, Pa., for Manufacturers Hanover Trust Co.

Gary M. Schildhorn, Gary Bressler, Philadelphia, Pa., for plaintiff/trustee.

Louis M. Fryman, Philadelphia, Pa., trustee/plaintiff.

Kenneth F. Carobus, Philadelphia, Pa., for defendants/Century Factors, Inc., Factor for Carna Mills and New Wave.

Barry J. Levin, Jay G. Ochroch, Philadelphia, Pa., for debtors.

Lawrence J. Tabas, Philadelphia, Pa., Richard L. Bond, New York City, for Suzanne November.

Steven T. Stern, Philadelphia, Pa., for Richard B. Schiro.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

In these long-outstanding consolidated adversarial proceedings initiated by the Trustee of a corporation in a Chapter 11 bankruptcy case to avoid, pursuant to 11 U.S.C. § 547, several allegedly preferential transfers made by the Debtor to a factor on behalf of two (2) of the factor's clients, we are called on to answer two (2) questions, both of which are rather easily resolved in favor of the Trustee on the record before us. The first is whether pension obligations of the Debtor should be considered as a liability in determining whether the Debtor was insolvent at the time of the transfers. We hold that, on this record, the evidence clearly indicates that we must do so, and hence we find that the Debtor was indeed insolvent on the dates of the transfers. The second question is whether, for purposes of 11 U.S.C. § 547(c)(2)(B), as it read at the pertinent time of the filing in this case in 1980, we should determine that the debts for which the payments were made were "incurred" at the time that payments were due from the Debtor or at the time that the services were performed and invoiced for the Debtor. We hold, consistent with all known

authority, including a recent decision of our own, that the debts were "incurred" at the time that the services were performed. In light of this decision, it is clear that more than forty-five (45) days elapsed between the dates that the debts in issue were "incurred" and the dates of the Debtor's payments, thus eliminating a § 547(c)(2) defense.

Consequently, we shall enter judgment in favor of the Debtor for the entire sum of the transfers in issue, although we decline to embellish this award with interest, because we believe that the Defendant was not, for the most part, responsible for the delays in bringing these matters to decision.

The Debtor in this proceeding, ART SHIRT LTD., INC., filed a Chapter 11 bankruptcy Petition in this Court on December 24, 1980. Also filing Chapter 11 Petitions on that date, at immediately succeeding case numbers, were two (2) related companies, CRACKER BARREL DRESSES, LTD. and RICHARD TODD, INC., and the three (3) cases have been jointly administered.

On September 28, 1982, the Trustee appointed for all three (3) Debtors, LOUIS W. FRYMAN, ESQUIRE, commenced two (2) of several adversarial proceedings instituted by him to avoid preferential transfers. The initial proceeding, numbered as Adversarial No. 82–2340K, named several defendants, among them "Defendant No. 12, CENTURY FACTORS, INC., FACTOR FOR CARNA MILLS." The second action, numbered as Adversarial No. 82–2341K, named, among the Defendants "Defendant No. 8, CENTURY FACTORS, INC., FACTOR FOR NEW WAVE." [1]

The two (2) cases involving CENTURY FACTORS, INC. (referred to hereinafter as "the Defendant") first came before this Court for a hearing on March 30, 1983. At that time, the parties entered into two (2) fact stipulations, one regarding the invoice date, due date, check number, and amount of each of five (5) invoiced transactions between the Debtor and NEW WAVE, and the other regarding four (4) invoiced transactions between the Debtor and CARNA MILLS, which are incorporated in our Findings of Fact below. On that date, testimony was adduced from Bruce Bamberger, Assistant Vice-President and "Credit Man" of the Defendant, and Ronald W. Launsbach, group credit manager of J.P. Stevens & Company, a defendant in this action whose controversy with the Trustee has been settled. In the course of the hearing, Counsel for the Trustee sought a continuance to later supplement the record with expert testimony from an accountant on the issue of insolvency.

Thereafter, on July 20, 1983, the parties executed a Stipulation that the sole issues involved in the matter were insolvency; whether the payments, given the factual matrix of due dates, invoices, and payments, constituted preferential transfers; and the Trustee's entitlement to a continuance. The parties submitted proposed Findings of Fact, Conclusions of Law, and Memoranda of Law addressing the stipulated issues, and the Trustee submitted a Motion for a Directed Verdict.

On July 27, 1983, the Defendant filed a Motion seeking relief from the Stipulation, claiming that agreed changes in wording had not been made in it by the Trustee. This Motion for relief was also briefed by the parties in August, 1983, and argument was heard by the Court, per the Honorable William A. King, Jr., our predecessor, presumably on all of the outstanding issues, on September 13, 1983, and the matter was taken under advisement.

---

1. There are several other independent preference-avoidance proceedings brought by the Trustee still pending before this Court, among them an attempt to avoid transfers totalling $1,300,000.00 to Manufacturers Hanover National Bank, Adversarial No. 82–2359K, a decision denying a Motion for Summary Judgment which is reported at 44 B.R. 523 (Bankr.E.D.Pa. 1984), and an attempt to avoid an alleged transfer of almost $600,000.00 to Suzanne November, the widow of one of the individual principals of the companies, on a "key-man" insurance policy, at Adversarial No. 82–2386K.

The matter did not resurface until January 14, 1986, when the Court filed a Memorandum Opinion and Order granting the Defendant's Motion for relief from the Stipulation and denying the Trustee's Motion for a directed verdict. On January 27, 1986, after a status conference, the Court entered a further Order directing the parties to continue settlement negotiations or file trial briefs on or before February 19, 1986. On February 20, 1986, the Trustee filed his Second Motion for a Direct Verdict, argument on which was heard by the Court on March 25, 1986, and denied in an Order of March 31, 1986. However, on April 10, 1986, the Court entered a further Order granting the Trustee's Motion for a Continuance, and a trial including the supplementary expert testimony, after being continued and rescheduled several times, finally came before the Court on August 21, 1986.

On August 21, 1986, Judge King was no longer sitting, and the matter was consequently heard by Chief Judge Emil F. Goldhaber. However, the undersigned, while awaiting confirmation, attended the trial, and hence is able to render any necessary credibility determinations on the basis of something more than the cold record.

On that date, Certified Public Accountant (CPA) Harris Devor and Henry N. Portner, Esquire, both associated with the accounting firm of Laventhol and Horwath, testified and were cross-examined, and the Defendant called Lawrence D. Bass, Esquire, also a CPA, who supervised the preparation of several accounting statements for the Debtor in the pertinent late–1980 period.

After Mr. Bass's direct testimony, Counsel for the Trustee commenced his cross-examination. In the course of same, the hour became late, and Judge Goldhaber suggested that, on the basis of the testimony already taken, the Trustee, whose case was somewhat incomplete because his cross-examination was not ended, might wish to move for judgment on the basis of what had already been heard. The transcript of the testimony already taken was then transcribed. On October 28, 1986, the transcript having been completed, we conducted a conference on this case and, as a result, issued an Order on October 29, 1986, directing the Trustee to file a Motion for Summary Judgment and supporting Brief addressing the issues of insolvency and the date that the debts in issue were "incurred," per 11 U.S.C. § 547(c)(2), on or before November 7, 1986, and for the Defendant to respond to same on or before November 21, 1986. The Plaintiff did in fact file a Motion for Judgment in timely fashion, and the Defendant responded thereto in timely fashion as well, rendering the matter, in our view, ripe for a final determination.

Although we used the term "Summary Judgment" in our Order of October 29, 1986, we note that the Trustee, in his Motion, moves for "judgment" and requests that we make our decision on the basis of factual findings arising out of the testimony presented at the two (2) hearings rather than upon affidavits, as is the normal protocol in a Motion for Summary Judgment. Upon reflection, we believe that the Trustee's approach is appropriate, because, at least on the insolvency issue, the key issues for resolution are factual, based upon credibility determinations resulting from the testimony adduced. Therefore, we are proceeding pursuant to Rule of Practice and Procedure in Bankruptcy (hereinafter "B.R.") 7052 and Federal Rule of Civil Procedure (hereinafter "F.R.Civ.P.") 52(a) rather than considering the Motion as we would if we considered it as maintained pursuant to B.R.7056 and F.R.Civ.P. 56. Per B.R. 7052 and F.R.Civ.P. 52(a), we shall therefore render specific Findings of Fact and Conclusions of Law relevant to the testimony taken in reaching our decision herein.

## FINDINGS OF FACT

1. The Debtor and its two (2) related companies, CRACKER BARREL DRESSES, LTD. and RICHARD TODD, INC., filed bankruptcy Petitions pursuant to Chapter 11 of Title 11, U.S. Code, on De-

cember 24, 1980, which have been jointly administered by this Court.

2. LOUIS W. FRYMAN, ESQUIRE, was appointed as Trustee in these cases on January 27, 1981, and the said Trustee commenced several actions to avoid preferential transfers against several parties in September, 1982, including the instant ac-tions, which name nineteen (19) (Adversarial No. 82–2340) and seventeen (17) (Adversarial No. 82–2341) party defendants, respectively, on September 28, 1982.

3. The parties have stipulated to the following dates of the invoices, due dates, check dates, check numbers, and check amounts for each of the transfers in issue:

### CARNA MILLS

| Invoice Date | Due Date | Check Date | Check No. | Amount |
| --- | --- | --- | --- | --- |
| 7/23/80 | 8/22/80 | 10/15/80 | 010981 | $ 6.80 |
| 8/6/80 | 9/5/80 | 10/15/80 | 011064 | 5.12 |
| 8/13/80 | 9/12/80 | 10/15/86 | 011119 | 30.08 |
| 9/2/80 | 11/1/80 | 11/25/80 | 011282 | 3,446.38[2] |

### NEW WAVE

| Invoice Date | Due Date | Check Date | Check No. | Amount |
| --- | --- | --- | --- | --- |
| 7/16/80 | 9/14/80 | 10/15/80 | 017003 | 32.40 |
| 8/15/80 | 10/14/80 | 10/31/80 | 017381 | 28.50 |
| 8/21/80 | 10/20/80 | 10/31/80 | 017452 | 58.15 |
| 9/19/80 | 11/18/80 | 12/3/80 | 017839 | 17,194.91 |
| 9/26/80 | 11/25/80 | 12/16/80 | 018006 | 26.25 |

4. The shipments of the goods reflected in the foregoing transactions all occurred on, or within two (2) days of, the respective dates that the invoices were issued. (Transcript of Testimony, March 30, 1983, at 18–19, 104–05).

5. In November, 1980, Kalow and Bass, Certified Public Accountants, prepared a Consolidated Balance Sheet for the three (3) Debtor Corporations reflecting that, as of September 30, 1980, the assets of all three (3) Debtor Corporations exceeded their liabilities by approximately $650,-000.00. (*Id.*, Defendant's Exhibit 1).

6. As a result and in support of his former firm's product which he supervised, Lawrence D. Bass, Esquire, a CPA and Attorney, testified, on August 21, 1986, that, in his opinion, the Debtor was solvent on October 31, 1980, and remained solvent throughout the pertinent period from October 15, 1980, through the date of the filing of the Petition. (*Id.* at 58–59, 69).

7. In preparing this Balance Sheet, Kalow and Bass did not include the Debtor's accrued pension obligation as a liability. (*Id.* at 66, 70–71).

8. Mr. Bass conceded that, if the Debtor's accrued pension obligation of approximately $1,000,000.00 were considered as a liability, then the Debtor would have been insolvent as of October 31, 1980, and at all pertinent times between October 15, 1980, and the date of the filing of the Petition. (*Id.* at 78).

9. Mr. Bass conceded that he was "not an expert in the pension area" (*id.* at 70), and that he was not "able to say with veracity" whether generally accepted accounting principles (hereinafter "GAAP") in effect in 1980 required that pension obligations be disclosed as a liability on a financial statement. (*Id.* at 77).

10. Harris Devor, an audit partner in Laventhol and Horwath, testified, on August 21, 1986, that, on the basis of pronouncements by the Financial Accounting Standards Board, as well as GAAP, the pension obligation of the Debtor should

---

**2.** Although the Stipulation states $*11*,446.38 in the chart prepared by the parties as part of the Stipulation, elsewhere in the Stipulation and in other references to this figure, the parties indicate that it should read $*3*,446.38.

have been included as a liability on the Balance Sheet prepared by Kalow and Bass. (*Id.* 16–17, 21–22).

11. Henry Neil Portner, Esquire, director of employee benefit consulting practice for Laventhol and Horwath, and an expert in the area of pension terminations and reversions (*id.* at 45–47), testified, on August 21, 1986, that a vested pension benefit, within the scope of the Employee Retirement Income Security Act of 1974 (ERISA) and the Multiemployer Pension Plan Amendment Act of 1980 (MPPAA), such as the pension obligation of the Debtor, was a real liability of the company (*id.* at 51–53), and that the MPPAA provides that an employer is considered insolvent if the liabilities of the employer, including the employer's pension obligation, exceed the employer's assets. (*Id.* at 54–55).

12. Mr. Devor testified that, irrespective of the pension obligation of the Debtor and certainly if such said obligation were considered as a liability, the Debtor was insolvent as of October 30, 1980. (*Id.* at 13, 31–32, and Trustee's Exhibit 2).

13. The testimony of Messrs. Devor and Portner is more reliable than that of Mr. Bass, and is therefore determined to be accurate in all instances where their testimony was inconsistent with that of Mr. Bass, mostly due to the admitted lack of certainty by Mr. Bass that his procedures were in fact accurate.

14. The most reliable expert testimony establishes that the liabilities of the Debtor exceeded its assets in the pertinent period, from October 15, 1980, through December 24, 1980, and that therefore the Debtor was in fact insolvent throughout this period.

15. The delays in the prosecution of this case are due, in substantial part, to the conduct of the Trustee, in failing to obtain experts prior to the dates of the initial hearings in 1983, not to the conduct of the Defendant.

## CONCLUSIONS OF LAW

1. Particularly in light of the fact that the Debtor is presumed to be insolvent throughout the pertinent period, 11 U.S.C. § 547(f), the Trustee has met his burden of proving that the Debtor was insolvent, per 11 U.S.C. § 547(b)(3).

2. The Trustee has met all of the other requirements of 11 U.S.C. § 547(b) necessary to avoid the transfers in issue as preferential.

3. The Debtor "incurred" its debts with the Defendant's clients, per 11 U.S.C. § 547(c)(2), on or within two (2) days from the dates of the respective invoices from the Defendant's clients.

4. The transfers by the Debtor to the Defendant's clients were not within forty-five (45) days from the dates that any of the debts in issue were "incurred," and, therefore, the Defendant is unable to fulfill all of the requirements of the version of 11 U.S.C. § 547(c)(2)(B) in effect when the Petition in issue was filed.

5. Therefore, the Defendant does not have a valid defense to the Debtor's preferential transfers pursuant to 11 U.S.C. § 547(c)(2).

6. The Trustee is entitled to judgment in his favor in the amounts of $3,482.83 against the Defendant as Factor for Carna Mills in Case No. 82–2340, and of $17,440.21 against the Defendant as Factor for New Wave in Case No. 82–2341, plus costs, but not additional interest.

## DISCUSSION

The Bankruptcy Code permits a trustee to avoid a preferential transfer if the elements of 11 U.S.C. § 547(b) are established, as set forth in the following:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the filing of the petition; ...

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title.

(B) The transfer had not been made; and

(C) Such creditor received payment of such debt to the extent provided by the provisions of this title.

The only element which is in issue here is whether the Debtor was insolvent on the dates of the transfers, as required by § 547(b)(3). In discussing this criterion, Collier states that, for purposes of § 547(b)(3), at variance from the insolvency test in other contexts, "a 'balance sheet' test ... determine[s] insolvency; the debtor is insolvent when its liabilities exceed its assets." 4 COLLIER ON BANKRUPTCY, ¶ 547.26, at 547–107 (15th ed. 1986). *See, e.g., Briden v. Foley*, 776 F.2d 379, 382 (1st Cir.1985); *In re American Insulator Co.*, 60 B.R. 752, 753–54 (Bankr.E.D.Pa.1986) (per GOLDHABER, CH. J.); and *In re Camp Rockhill, Inc.*, 12 B.R. 829, 833 (Bankr.E.D.Pa.1981) (per KING, J.).

The critical time for measurement of the debtor's assets and liabilities per this balance sheet test is "the time of the transfer." 4 COLLIER, *supra,* at 547–110; *see also, e.g., American Insulator, supra,* 60 B.R. at 754; *Camp Rockhill, supra,* 12 B.R. at 633.

The Code itself speaks directly to the issue of the relative burdens of proof of the parties for establishing insolvency: it states that "the debtor is presumed to have been insolvent on and during the ninety (90) days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). In light of this provision, "a bare allegation of the debtor's solvency" is insufficient to rebut the presumption. *In re Demetralis*, 57 B.R. 278, 281 (Bankr.N.D. Ill.1986). The purpose of this presumption is said to be "to simplify a trustee's burden of proving insolvency by dispensing with the necessity of reconstructing debtor's financial condition." *In re Keydata Corp.*, 37 B.R. 324, 326 (Bankr.D.Mass.1983).

However, the most detailed discussion of the import of 11 U.S.C. § 547(f) appears in the discussion by our Chief Judge, Emil F. Goldhaber, in *American Insulator.* Therein, Judge Goldhaber discusses the "bursting bubble" theory of treating presumptions—that the production of a scintilla of evidence to the contrary entirely destroys the effect of the presumption—as opposed to the view of "giving some weight to a presumption even in the face of contradictory evidence," 60 B.R. at 754. Although, like Judge Goldhaber in *American Insulator,* we do not consider the resolution of this split of reasoning necessary to our determination, our tendency is against the "bursting bubble" theory and more towards the view that the presumption casts weight on the side of the Trustee at any point in the decision-making process.

It is well established that the Debtor's own "balance sheets" are not conclusive of the issue of insolvency. In *Briden, supra,* the Court of Appeals held that the bankruptcy court properly rejected the debtor's overstated inventory figures. *Accord: American Insulator,* 60 B.R. at 755; and *In re Howdeshell of Ft. Myers,* 55 B.R. 470, 472–74 (Bankr.M.D.Fla.1985).

Even more factually closely analogous to the instant case are those cases where the debtor's declaration of solvency was undermined by its failure to account for certain liabilities. *See In re Ollag Construction Equipment Corp.*, 578 F.2d 904, 908 (2nd Cir.1978) (debtor's liability under insurance indemnity agreement should have been considered); and *In re A. Fassnacht & Sons, Inc.*, 45 B.R. 209, 216–17 (Bankr.E.D.Tenn. 1984) (disputed tax liability must be considered).

Applying the foregoing analyses to our Findings of Fact here leads to the result that the Debtor here was insolvent at the pertinent times. The Debtor's balance sheet, as prepared by Kalow and Bass, revealed the Debtor as solvent. However, this balance sheet failed to disclose the Debtor's pension obligations under ERISA. Since this Court is not obliged to accept the Debtor's own declarations

where same are deficient in disclosing the Debtor's liabilities, the issue boils down to whether we should prefer the testimony of the Trustee's highly qualified experts who state that the Debtor's pension obligations must be counted as liabilities, or instead prefer the rather shaky defense given to his calculations by the Debtor's accountant. Particularly given our belief that close calls must be made in favor of insolvency due to the presence of 11 U.S.C. § 547(f) at any point in the decision-making process, as we indicate at page 322 *supra,* it is apparent that we must reach the conclusion that the Debtor's pension obligation should have been counted as a liability on its Balance Sheet, and that hence the Debtor was insolvent at the pertinent times.

Both parties urge us to undertake an independent analysis of ERISA and the MPPAA to determine whether the Debtor's pension obligations were in fact liabilities. We do note that determination of MPPAA liability is a recurrent problem in many bankruptcy cases. *See. e.g., Trustees of Amalgamated Insurance v. McFarlin's,* 789 F.2d 98 (2d Cir.1986); *Granada Wines, Inc. v. New England Teamsters and Trucking Indus. Pension Fund,* 748 F.2d 42 (1st Cir.1984); *In re Columbia Motor Express, Inc.,* 33 B.R. 389, 393 (M.D.Tenn. 1983); *In re T.D.M.A., Inc.,* 66 B.R. 992 (Bankr.E.D.Pa.1986) (per SCHOLL, J.); *In re Great Northeastern Lumber and Millwork Corp.,* 64 B.R. 426 (Bankr.E.D.Pa. 1986) (per GOLDHABER, CH. J.); *In re Pulaski Highway Express,* 57 B.R. 502 (Bankr.M.D.Tenn.1986); *In re United Department Stores,* 49 B.R. 462 (Bankr.S.D. N.Y.1985); *In re Concrete Pike Machinery Co.,* 28 B.R. 837 (Bankr.N.D.Iowa 1983); *In re Braniff Airways, Inc.,* 24 B.R. 466 (Bankr.N.D.Tex.1982); *In Re Threewit,* 20 B.R. 434 (Bankr.D.Kan.1982); and *Eisenberg v. Baviello,* 12 B.R. 412 (Bankr.E.D.N. Y.1981).

However, we believe that our resolution of the issue of whether potential MPPAA liability should be considered as a liability for determining solvency on this record is rendered on the basis of determining which parties' experts in the accounting field were the most convincing, and, here, we are constrained to find that the Trustee's experts were by far the more convincing.

The decision which we reach here appears totally consistent with the earlier decision of our predecessor, Judge King, on the identical issue of this particular Debtor's insolvency in another preference action, *In re Art Shirt, Ltd. (Fryman v. Manufacturers Hanover Trust Co.),* 44 B.R. 523 (Bankr.E.D.Pa.1984). There, the Court denied the creditor's motion for summary judgment due to the presence of an affidavit submitted by the Trustee from an accounting firm other than Laventhol and Horwath, the Trustee's experts here, "that as a result of the firm's examination of the information to date, it is the opinion of the firm that the debtor was insolvent on October 14, 1980; ..." *Id.* at 526. There, the alleged preferential transfer occurred on September 30, 1980, thus rendering that opinion not completely conclusive as applied to the facts here. Here, all of the transfers occurred after October 15, 1980.

Thus, based on the expert testimony in the record in this case, we have no hesitancy in concluding that the Debtor was insolvent at all times between October 15, 1980, and December 16, 1980, and that the Trustee hence has met all of the criteria set forth in 11 U.S.C. § 547(b).

The only other defense articulated by the Defendant is that the transfers in issue fell within the scope of 11 U.S.C. § 547(c)(2). As the instant case predates the amendments made to § 547(c)(2) by the Bankruptcy Code in the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353 (BAFJA), it is necessary that we apply hereto the version of § 547(c)(2) as it existed prior to the enactment of BAFJA, which read as follows:

(c) The trustee may not avoid under this section a transfer— ...

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or fi-

nancial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary terms; ...

■ As § 547(c)(2) sets forth its four (4) criteria in the conjunctive, all of these elements of § 547(c)(2) must be satisfied if the defense of this section is to be successfully invoked. The most objective of these criteria, the since-repealed requirement of § 547(c)(2)(B) that the alleged preferential payments be transferred within forty-five (45) days of the respective dates that the debts for which they made payment were "incurred," commands our immediate attention, because we conclude that this criterion is not met here and, thus, that the Defendant's § 547(c)(2) defense must fail.

■ As we indicated in *In re American International Airways, Inc. (Begier v. Krain Outdoor Advertising, Inc.)*, 68 B.R. 326, 331 (Bankr.E.D.Pa.1986), the following is the classic statement of when a debt is determined to be incurred, for purposes of § 547(c)(2):

the debt is incurred on the date that the debtor becomes liable for it—when a resource is consumed or a service performed—, not the date that the creditor chooses to bill the debtor. *In re Emerald Oil Co.*, 695 F.2d 833, 837 (5th Cir. 1983).

Five (5) other Circuit Courts of Appeal have unanimously agreed with this interpretation by the Fifth Circuit Court of Appeals, *see In re White River Corp.*, 799 F.2d 631, 632 (10th Cir.1986); *In re Advance Glove Mfg. Co.*, 761 F.2d 249, 250 (6th Cir.1985); *In re Gold Coast Seed Co.*, 751 F.2d 1118, 1119 (9th Cir.1985); *In re Iowa Premium Service Co.*, 695 F.2d 1109, 1111 (8th Cir.1982); and *Barash v. Public Finance Corp.*, 658 F.2d 504, 509 (7th Cir. 1981), as has this Court in not only *American International Airways, supra,* but

also in *In re Naudain*, 32 B.R. 875, 879, and 32 B.R. 871, 874 (Bankr.E.D.Pa.1983) (per GOLDHABER, CH. J.).

Here, there are three (3) sets of dates provided in each transaction: the shipment dates, the invoice dates, and the due dates. The shipment and invoice dates are established as very close or identical.

In most of the pertinent reported cases, the contest is over whether the date of shipment or a later date of invoice is to be considered as the date that the debt is "incurred." Precedent has uniformly established that the earlier date of shipment controls. *See, e.g., In re Saco Local Dev. Corp.*, 25 B.R. 876, 879 (D.Me.1982); *In re Hartwig Poultry, Inc.*, 56 B.R. 320, 325 (Bankr.N.D.Ohio 1985); *In re Production Steel, Inc.*, 54 B.R. 417, 420 (Bankr.M.D. Tenn.1985); *In re Richter and Phillips Jewelers and Distributors, Inc.*, 31 B.R. 512, 515 (Bankr.S.D.Ohio 1983); and *In re Valles Mechanical Industries, Inc.*, 21 B.R. 542, 543 (Bankr.N.D.Ga.1982). Here, we are presented with an easier case than in the foregoing cases, because the shipment dates and the invoice dates are virtually identical, and both are more than forty-five (45) days prior to the payment dates.

We do not accept, consistent with these cases, the principle that the parties can, by contract, defer the date that a debt is incurred to a subsequent date. Thus, in *In re Chase and Sanborn Corp.*, 51 B.R. 736, 738 (Bankr.S.D.Fla.1985), the court holds: "the creditor cannot be permitted to manipulate the 45–day period by deferring the date of payment."

Consistent with our holding in *American International Airways, supra,* at 332, that the date that a debt is incurred is measured "from the earlier of the date of when services are provided or the parties' contract calls for payment," and all of the other known authorities, we must conclude that the "due dates" for the payments are irrelevant. We must instead measure the 45–day period from the dates that the shipments were made. Clearly, the payments by the

Debtor here were not made within forty-five (45) days from the dates that any of the shipments were made to the Debtor. The Defendant hence cannot meet the requirements of § 547(c)(2)(B) and its § 547(c)(2) defense must fail.

■ Only one (1) issue remains. The Trustee requests that we award him not only the sums of $4,382.83 and $17,440.21, which are the sum totals of the amounts of the preferential transfers in issue, but also interest from September 28, 1982, the date of the filing of these actions to the present. We believe that, where a defendant has withheld a definite sum due to a plaintiff without good reason, an award of pre-judgment would be appropriate under what we believe to be the controlling Pennsylvania law.[3] *See, e.g., Benefit Trust Life Insurance Company v. Union National Bank,* 776 F.2d 1174, 1178–79 (3d Cir.1985); *Penneys v. Pennsylvania Railroad,* 408 Pa. 276, 183 A.2d 544 (1962); and *RESTATEMENT* (SECOND) OF CONTRACTS, § 354(1) (1981). We have awarded such interest where we believed such an award to be just. *See In re Lessig Construction Inc.,* 67 B.R. 436, 444–45 (Bankr.E.D. Pa.1986).

However, we believe that the underpinnings of the Pennsylvania law are that pre-judgment interest "arises 'from defendant's delay in accounting to the plaintiff' ... for the delays inherent in litigation."

*Ambromovage v. United Mine Workers of America,* 726 F.2d 972, 981 (3d Cir.1984). *Cf. Craig v. Magee Memorial Rehabilitation Center,* —— Pa. ——, 515 A.2d 1350, 1353 (1986) (Pennsylvania Rule of Civil Procedure 238, which accorded plaintiff damages for delay without account of fault for delay, is unconstitutional).

■ Here, the Defendant does not appear responsible for the four-year delay in litigating this matter to conclusion. Rather, it was, in part, a delay in the Court's deliberative process induced by the Trustee's own delay in mustering the necessary expert testimony on the insolvency issue, causing him to request a continuance in 1983, and occasioning the delay.[4] Moreover, the Defendant's opposition to this action, on the ground that the Debtor was not insolvent, while ultimately found to be unsuccessful, was hardly frivolous. We therefore are not inclined to follow such cases as *Demetralis, supra,* 57 B.R. at 284; and *In re Independent Clearing House Co.,* 41 B.R. 985, 1015 (Bankr.D.Utah 1984), to the extent that they appear to hold that an award of pre-judgment interest follows a judgment in a preference action as of course.

Accordingly, we shall enter a judgment against the Defendant, as Factor for Carna Mills, in the amount of $3,482.83 in Adversary Case No. 82–2340K(12), and against

---

3. The parties provide us no guidance as to what law should be applied in rendering this decision. We are aware that we are "governed by state law, absent an overruling federal law." *Debentureholders Protective Comm. of Continental Inv. Corp. v. Continental Inv. Corp.,* 679 F.2d 264, 268 (1st Cir.1982), *cert. denied sub nom. Glen Corp. v. O.C. Associates,* 459 U.S. 894, 103 S.Ct. 192, 74 L.Ed.2d 155 (1982). We are applying the law of Pennsylvania, where we are sitting by default, since the record is silent on facts relevant to this issue. We should mention that we believe that these transactions occurred in New York and that hence New York law *may* apply. However, our survey of New York law indicates that, "in an action of equitable nature," such as the instant preference-recovery action, "interest and the rate and date from which it shall be computed shall be in the court's discretion." N.Y.CIV.PRAC.L. & R.

5001a (Consol.1987 Supp.Pamphlet). We would exercise our discretion to deny interest here under the same considerations which the Pennsylvania law, which we apply in default, indicates are pertinent. Hence, we believe that our result that interest should be denied would be the same under New York or Pennsylvania law. If federal law is applied, it will likely follow the RESTATEMENT (SECOND) OF CONTRACTS, § 354(1), cited hereafter as the law of Pennsylvania, and hence leading to the same result.

4. In this regard, we note that the Trustee had apparently not hired the very convincing experts who testified in this trial even as of early 1984, when the Summary Judgment Motion in the case involving Manufacturers Hanover Trust Company was before the Court. *See* 44 B.R. at 525.

the Defendant, as Factor for New Wave, in the amount of $17,440.21 in Adversary Case No. 82–2341K(8), plus costs only.