### In re AMERICAN INTERNATIONAL AIRWAYS, INC., Debtor.

### Bankruptcy No. 84–02379K.

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 2, 1987.

Henry F. Siedzikowski, Philadelphia, Pa., for William Condren, Cauff, Lippman & Co., Inc.

Marshall A. Fleisher, Philadelphia, Pa., for American Financial Corp., Great American Life Ins. Co., Great American Management Services, Inc. Provident Bank, as Trustree for 2801 Enterprises.

Edward J. DiDonato, Philadelphia, Pa., for Trustee.

Harry P. Begier, Jr., Philadelphia, Pa., Trustee.

Pace Reich, Philadelphia, Pa., for debtor.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The instant matter before the Court presents a difficult question concerning the right of an administrative claimant to interest; and, assuming that such interest is

payable, relatively easy questions regarding the rate of such interest and whether payment of such interest may be ordered to be made immediately, or should be deferred until the effective date of the Plan. We conclude that, while generally interest would not be payable to an administrative claimant in the absence of a contract, the unusual circumstances of this case, e.g., a district court directive that the principal sum of the claim on which interest is sought be paid immediately, justify an administrative claim for interest. Compelled to reach the other questions, we hold that the interest payable should be calculated at the legal rate and that the claimant is not entitled to immediate payment of the interest awarded.

The underlying facts in this matter are undisputed, and therefore we shall set down these facts and the complex procedural history which brings us to the instant Motion in narrative form.

On July 19, 1984, American International Airways, Inc. (hereinafter referred to as "the Debtor"), filed a voluntary Chapter 11 bankruptcy petition. At the time, the Debtor operated a passenger airline service.

On July 31, 1984, American Financial Corp., Great American Life Insurance Co., Great American Management Services, Inc. and Provident Bank as Trustee for 2801 Enterprises (referred to hereinafter collectively as "AFC"), obtained a security interest in certain post-petition assets of the Debtor and became entitled to a super-priority pursuant to § 507(b) of the Code to the extent of any claim which arose from the Debtor's use of cash collateral.

Many of the Debtor's sales involved credit-card transactions. Prior to filing the Chapter 11 petition, the Debtor had an agreement with certain banks to process and collect the credit-card slips which were received from passengers.

On July 20, 1984, the banks notified the Debtor that they would no longer process and collect the credit-card slips. Thereafter, the Debtor approached the Moving Party herein, William J. Condren (hereinafter referred to as "the Movant"), to attempt to resolve this problem. On August 23, 1984, this Court approved an agreement between the Movant and another business, Cauff, Lippman & Co. (the Movant and this business are referred to collectively hereinafter as "CLCC"), and the Debtor whereby CLCC would attempt to locate a bank to process the Debtor's credit-card slips; would pay the Debtor $250,000.00 in cash in exchange for $250,000.00 worth of credit-card slips; and the Debtor would repurchase the slips from CLCC upon the earlier of the Debtor's entering into an arrangement with the bank to process the slips *or* the expiration of fourteen (14) days from CLCC's purchase of the slips. The agreement also provided that the obligation of the Debtor to repurchase the slips was designated as a claim entitled to administrative expenses priority in the Chapter 11 case and CLCC would receive a flat fee of $7,500.00 for its services.

CLCC succeeded in locating a new bank to process and collect credit-card slips for the Debtor. On September 5, 1984, the Movant, on behalf of CLCC, agreed to deliver the slips which he was holding to the Debtor. In exchange therefor, the Movant received two checks totalling $257,500.00 from Arthur Toll, the Debtor's President, drawn on the Debtor's account.

On September 6, 1984, the Movant presented both checks for payment. However, the larger check, in the amount of $171,495.00, was not honored then or at any later time.

On September 19, 1984, Harry P. Begier, Jr. was appointed Trustee in the Debtor's case. On September 26, 1984, the Movant began the procedural sequence in this Court which led to the instant Motion by filing a Motion for Immediate Payment of Administrative Expense. Specifically requested were the sum of $171,495.00, plus "costs and attorneys' fees in connection with this Motion plus a reasonable interest allowance."

This Motion was opposed by AFC and the Trustee. On February 28, 1986, this Court, per our predecessor, the Honorable William A. King, Jr., denied this Motion in an unreported Opinion and Order, holding that pay-

ment must be deferred "until a determination is made of all administrative claims and whether where [sic] there are sufficient unencumbered assets to pay those claims." Slip. op. at 14.

An appeal of Judge King's decision was taken by the Movant to the United States District Court. On June 16, 1986, the Honorable Donald W. VanArtsdalen of the District Court rendered an Order reversing Judge King's Order and directing that the Movant's claim be paid "out of the first available unrestricted funds in the estate." No further appeal was taken from this Order.

On July 29, 1986, the Trustee filed a Motion requesting that we "clarify" the District Court's Order and determine whether funds encumbered by AFC's super-priority claim were within the scope of "unrestricted" funds. In an unreported Memorandum and Order of October 16, 1986, we concluded that Judge Van Artsdalen meant to provide CLCC with a priority over even that of AFC's super-priority claim. Hence, terming CLCC's claim as a "super-super-priority claim," we directed that Judge VanArtsdalen's Order would be properly effected only by an Order directing that CLCC be paid $171,495.00 from any accounts restricted only by AFC's security interest, as opposed to other funds restricted by other specific pre-petition encumbrances.

No appeal or further Motion came before us subsequent to our Order of October 16, 1986, at that time. We note that, in his arguments before us at that time, the Movant specifically requested that CLCC be paid the sum of $171,495.00 and no more. The instant Motion informs us that the Trustee remitted the $171,495.00 to CLCC on November 26, 1986.

All was quiet until June 16, 1987, when the Movant filed the instant Motion which, borrowing from the terminology of our October 16, 1986, Memorandum, is entitled a Motion for Allowance and Immediate Payment of Super-Super-Priority Claim. In the Motion, the Movant requested immediate payment of $40,829.69, which he calculated to be the interest on $163,995.00 ($171,495.00 less his fee of $7,500.00) at what he contended was the market rate of interest, i.e., "the rate of two points above prime," from September 6, 1984, to November 26, 1986.

Only the Trustee answered the Motion, denying the Movant's right to relief and raising three affirmative defenses: laches, waiver, and accord and satisfaction. At a hearing on July 15, 1987, the Trustee conceded the accuracy of the Movant's mathematics in calculating the interest, not conceding however that the market rate was an appropriate measure nor that two points above prime was the appropriate market rate. We requested the parties to file Briefs on this issue on or before July 31, 1987, and August 14, 1987, respectively.

Although the Briefs were timely prepared, we found them both somewhat off the mark of the issue which we believe that this matter presents. The Movant appropriately observes that the Trustee totally failed to make out the elements of laches, waiver, or accord and satisfaction.[1] However, the only authority cited in support of this Motion is *In re Goldblatt Bros., Inc.,* 61 B.R. 459 (Bankr.N.D.Ill.1986), which we believe is both inapposite and was probably wrongly decided; and state law authority, *e.g., Verner v. Shaffer,* 347 Pa.Super. 206, 210–11, 500 A.2d 479, 481 (1985), for the principle that pre-judgment interest is appropriately awarded where a definite sum due to a party was withheld without good reason.

---

1. However, we should observe that the Trustee failed to assert a defense which may well have resolved the Motion entirely in his favor summarily, i.e., the subset of the doctrine of res judicata known as merger. *See In re Laubach, Laubach v. Fidelity Consumer Discount Co.,* 77 B.R. 483, 485–89 (Bankr.E.D. Pa.1987). The Movant raised no objection to the directive in our Order of October 16, 1986, that only $171,-

495.00 be paid by the Trustee until eight months after our Order. Hence, invocation of merger would appear to have barred the instant Motion entirely.

Unfortunately for the Trustee, res judicata (and hence merger) is an affirmative defense which is waived if it is not pleaded, as was the case here. *See* Federal Rule of Civil Procedure 8(c).

At no point does the Movant discuss or even mention the fact that an administrative claim under the Bankruptcy Code is in issue and whether and how his claim is authorized by the Code section pertinent to administrative claims, 11 U.S.C. § 503.

*Goldblatt* is rather clearly inapposite, as it involves a pre-petition claim rather than a post-petition, administrative claim, as is in issue here. Moreover, given our expressed reluctance to espouse the theory that what would otherwise be portions of property of a debtor's estate can be segmented from the estate by the theory that certain funds are held in trust, *see In re Miller's Auto Supplies, Inc., Schwartz v. Commonwealth of Pennsylvania Department of Revenue*, 75 B.R. 676, 678–82 (Bankr.E.D.Pa.1987); and *In re American International Airways, Inc.*, 70 B.R. 102, 103, 105 (Bankr.E.D.Pa.1987), it is very doubtful that we would follow *Goldblatt*, the keystone of which is a trust theory, even on its own facts.

We are also quite cognizant of the Pennsylvania law on pre-judgment interest. *See In re Art Shirt, Inc.*, 68 B.R. 316, 325 (Bankr.E.D.Pa.1986); and *In re Lessig Construction, Inc.*, 67 B.R. 436, 444–45 (Bankr.E.D.Pa.1986). However, here, we believe that the Pennsylvania law must recede to an "overruling federal law," i.e., 11 U.S.C. § 503. *See Debentureholders Protective Comm. of Continental Inv. Co. v. Continental Inv. Co.*, 679 F.2d 264, 268 (1st Cir.), *cert. denied sub nom. Glen Corp. v. O.C. Associates*, 459 U.S. 894, 103 S.Ct. 192, 74 L.Ed.2d 155 (1982); and *Art Shirt, supra*, 68 B.R. at 325 n. 3.

Meanwhile, the Trustee presents argument from authorities which address not the directly pertinent issue of when interest should be allowed on administrative claims, but only the analogous issue of whether interest should be allowed on prepetition claims. We do agree that, indirectly, a common thread of those cases, that interest is not liberally allowed to any creditors in bankruptcy, as a consequence of the "equal-distribution" theory, is somewhat pertinent. *See, e.g., In re Cann & Saul Steel Co.*, 76 B.R. 479, 486–87 (Bankr.

E.D.Pa.1987) (compensation for lost opportunity costs need not be provided); *In re Grant Broadcasting of Philadelphia, Inc. (First Opinion)*, 71 B.R. 376, 388–89 (Bankr.E.D.Pa.1987), *aff'd*, 75 B.R. 819 (E.D.Pa.1987) (same); *In re Shaffer Furniture Co.*, 68 B.R. 827, 830–31 (Bankr.E.D. Pa.1987) (unsecured creditors allowed interest on claims only if estate is solvent and equities support such an award); and *In re Small*, 65 B.R. 686, 693 (Bankr.E.D.Pa. 1986), *aff'd*, 76 B.R. 390 (E.D.Pa.1987) (interest on mortgage arrears not authorized by 11 U.S.C. § 506(b)).

However, none of these cases address the issues presented here, i.e., the Movant's right to interest payments, the measurement of any interest due, and the timing of such payments, when the Movant asserts an *administrative* claim.

The starting point for discussion of this issue is 11 U.S.C. § 503(b)(1), which provides as follows:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

(B) any tax—

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title; or

(ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case; and

(C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph; ...

The first noteworthy observation is that the right of an administrative claimant to interest is not specifically provided for anywhere in 11 U.S.C. § 503(b)(1). Several cases have, however, considered the sub-

ject of whether § 503(b)(1)(C) allows or disallows interest to taxing authorities on post-petition, administrative claims, and we believe that these cases are, by analogy, worthy of some scrutiny. Collier, addressing this subject equivocally, states as follows:

The Code does not expressly provide for interest on postpetition taxes to be treated as an administrative expense. The Senate version of the bill, which did so provide, was not adopted. Nevertheless, the courts have split over whether to treat interest on post-petition taxes as an administrative expenses. 3 COLLIER ON BANKRUPTCY, ¶ 503.04.[1][c], at 503–39 (15th ed.1987).

We have carefully reviewed these cases and note that the following cases hold that interest is payable as administrative claims of taxing authorities: *United States v. Friendship College, Inc.,* 737 F.2d 430, 432–33 (4th Cir.1984); *In re Associated Air Services, Inc.,* 75 B.R. 47, 48–50 (Bankr.S. D.Fla.1987); *In re Patch Press, Inc.,* 71 B.R. 345, 348–50 (Bankr.W.D.Wis.1987); *In re General Polymerics Corp.,* 54 B.R. 523, 524–26 (Bankr.D.Conn.1985); *In re Pharmadyne Laboratories, Inc.,* 53 B.R. 517, 519–20 (Bankr.D.N.J.1985); *In re Thompson,* 67 B.R. 1, 2–3 (Bankr.N.D.Ohio 1984); and *In re Razorback Ready-Mix Concrete Co.,* 45 B.R. 917, 926 (Bankr.E.D.Ark.1984). The reasoning of these cases is based upon the Supreme court's decision in *Nicholas v. United States,* 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), which lumps consideration of "penalties" and "interest" together, and the belief that Congress, despite striking the Senate version of the Code which expressly would have authorized collection of interest, meant to implicitly retain such an allowance, whether as part and parcel of the tax itself or as an element of a "fine, penalty, or reduction in credit," per § 503(b)(1)(C).

However, an approximately equal number of cases hold directly to the contrary: *In re Mansfield Tire & Rubber Co.,* 73 B.R. 735, 740 (Bankr.N.D.Ohio 1987); *In re Gould & Eberhardt Gear Machinery Corp.,* 69 B.R. 944, 946–49 (Bankr.D.Mass. 1987); *In re Hirsch-Franklin Enterprises,*

*Inc.,* 63 B.R. 864, 869–71 (Bankr.M.D.Ga. 1986); *In re Lumara Foods of America, Inc.,* 50 B.R. 809, 810 (Bankr.N.D.Ohio 1985); *In re H & C Enterprises,* 35 B.R. 352 (Bankr.D.Idaho 1983); and *In re Stack Steel & Supply Co.,* 28 B.R. 151, 155–56 (Bankr.W.D.Wash.1983). *Cf. In re Boston & Maine Corp.,* 719 F.2d 493, 498–502 (1st Cir.1983) (interest denied where court allowed debtor to delay in making post-petition tax payments). These cases reason, principally, that by intentionally omitting mention of interest from 11 U.S.C. § 503(b)(1)(C), Congress meant to exclude the right of taxing authorities to its collection.

Despite an intensive search, we have located but three cases addressing the issue of entitlement of administrative claimants to interest payments in a non-tax context. Two of these, *In re Becker,* 51 B.R. 975 (Bankr.D.Minn.1985); and *In re Island Aviation, Inc.,* 35 B.R. 20 (Bankr.D.Hawaii 1983), involve claimants who executed contracts with the Debtor which expressly provided them with interest, which the respective courts, it appears to us properly, allowed. In the other, *In re Mesa Refining, Inc.,* 66 B.R. 36 (Bankr.D.Colo.1986), the court allowed reclamation claimants to recover interest at "the statutory rate." The *Mesa Refining* court relied heavily upon the *Friendship College* line of cases in reaching its conclusion.

The most comprehensive discussion of administrative claims in which we have engaged to date is included in *In re Grant Broadcasting of Philadelphia, Inc. (Fourth Opinion),* 71 B.R. 891 (Bankr.E.D. Pa.1987). There, we related, as a "basic policy," the principle of "keeping administrative costs to a minimum [which] preserves the debtor's necessarily scarce resources and thus encourages rehabilitation." *Id.* at 897. Thus, we suggested there that § 503(b)(1) be "read narrowly" and embrace only those items clearly allowed by statute. *Id.*

Following this reasoning, we would not be inclined to follow the *Friendship College* line of cases. If authority to award

interest is not specifically provided for in the Code, particularly if it was initially placed in and subsequently removed, then we do not think we should put it in. Hence, we are reluctant to reach a result generally consistent with *Mesa Refining,* the reasoning of which we do not embrace.

■ We believe that the correct rule is that, barring a contract expressly allowing same, as was present in *Becker, supra,* and *Island Aviation, supra,* interest must ordinarily be excluded, as part of an administrative claim of any kind. We believe that it would be illogical to deny interest in the context of post-petition tax claims, to which Congress accorded some special treatment by including certain penalties within the scope of an administrative claim, and deny it to others.

We do note that this rule does not prevent the administrative claimant from presenting a claim for interest. It merely means that, ordinarily, such a claim will be accorded unsecured rather than administrative-claim status.

■ We also believe that, in certain extraordinary circumstances, interest can be included as part of an administrative claim. A debtor's agreement to pay such interest, in a post-petition contract, as we indicated below, constitutes, in our view, such an instance. We further believe that the instant claim of the Movant, already accorded a special status as a "super-super-priority claim" by order of the district court due to the extreme equities in favor of the Movant, entitles the Movant to an administrative claim for interest. Thus, despite providing a general rule that interest will be excluded to administrative claimants except in extraordinary circumstances, we hold that this case presents such an extraordinary circumstance, and hence we will award interest to the Movant as an administrative claim here.

We have thus resolved the difficult issue in this case, and agreed to allow the Movant to assert an administrative claim for interest on the $163,995.00 of which he was defrauded by the Debtor. Given the closeness of this issue which we decided in his favor, the Movant should not be disappointed to learn that the rate of interest which we will allow is the legal rate, not the market rate which he calculated, and that immediate payment of this sum must be denied.

The Movant cites no autl.ority to support a claim of pre-judgment interest at any rate greater than the statutory rate. Indeed, the authorities cited by the Movant all provide for interest at the statutory rate, *e.g.,* 18 Pa.C.S.A. § 4105(e)(2); *Verner, supra,* 347 Pa.Super. at 211, 500 A.2d at 482; and RESTATEMENT (SECOND) OF CONTRACTS, § 354, comment a, at 151 (1981). Other instances where pre-judgment interest has been allowed, and where the equities similarly greatly favored the party receiving such an allowance, have limited the interest rate to the legal rate. *See, e.g., Benefit Trust Life Ins. Co. v. Union National Bank of Pittsburgh,* 776 F.2d 1174, 1180 (3d Cir.1985); *Lessig Construction, supra,* 67 B.R. at 444–45; and *In re Fasulo,* 25 B.R. 583, 587 (Bankr.D.Conn.1982) (fraud present). We therefore hold that the interest, which we believe should be measured for the period from September 6, 1984, to November 26, 1986, as the Movant requests, should be calculated at the legal rate of six (6%) percent for that period.

Finally, as the Fourth *Grant Broadcasting* Opinion cited above made abundantly clear, 71 B.R. at 899–900, there is no authority for the contention that administrative claims can generally be paid immediately, prior to confirmation. The only exceptions we noted there are claims which involve real-property leases, in light of the particular concern for landlords expressed in the Code, *id.* at 898–99, 901, and where such payments are necessary to adequately protect administrative claimants in consideration for providing ongoing cash, goals, or services to the Debtor necessary to preserve the estate. *Id.* at 901–02. Neither exception applies here. Having been fortunate in recovering immediate payment of the principal sum which he advances and for which he was not compensated, the Movant should not be heard to complain to

**496**

have to wait, like most other administrative claimants, to collect his interest.

An Order consistent with this Opinion shall be issued.

ORDER

AND NOW, this 2nd day of September, 1987, upon consideration of the Motion For Allowance And Immediate Payment Of Super-Super-Priority Claim filed by William J. Condren (hereinafer referred to as "Condren"), and after consideration of the respective Briefs of the parties, it is hereby ORDERED as follows:

1. The Motion is GRANTED in part. Condren shall be entitled to receive interest on the sum of $163,995.00 calculated from September 6, 1984, to November 16, 1986, at six (6%) percent per annum.

2. The request for immediate payment of this sum is DENIED.