**In the Matter of Marvin W. DAVISON and Betty Suzanne Davison, Debtors.**

**Bankruptcy No. 83–00699–SW–3.**

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

Aug. 5, 1988.

Motion to Reconsider Aug. 30, 1988.

Richard Knight, Olathe, Kan., for debtors.

Elizabeth Sauer, Campbell, Morgan & Gibson, P.C., Kansas City, Mo., for movants.

## ORDER OF DISTRIBUTION OF FUNDS OF ESTATE

DENNIS J. STEWART, Chief Judge.

Formerly, on June 28, 1988, this court issued its order directing the creditors, or any of them, to show cause in writing within 25 days why distribution of the within estate should not take place in accordance with the calculations contained therein and according to the legal principles there contained. In response to that order, two objections to the proposed distribution have been filed. They are considered in the paragraphs which follow.

### *The objection of Campbell, Morgan & Gibson, P.C.*

■ It was the proposal in the show cause order of June 28, 1988, that all of the attorney's fees of Campbell, Morgan & Gibson, P.C., which were claimed by them at that time should be paid from the estate, but according to a priority which would relegate most of their fees to a second priority partial distribution. To this, objection has been made to the effect that such relegation is not appropriate. But "Code section 726(b) expressly limits the superpriority status to those administrative expenses incurred solely under the Chapter 7 case after its conversion. Hence, the applicants (for attorneys' fees) are compelled to look beyond this estate for the source of any compensation with respect to their legal services performed during the Chapter 11 period." *In re Codesco, Inc.*, 18 B.R. 225, 228 (Bkrtcy.S.D.N.Y.1982). "(S)uperceding chapter 7 expenses are entitled to be paid in full before priorities of the next rank—administrative expenses incurred in the superceded chapter 11 case— are paid in full or in part." *In re Energy Co-op, Inc.*, 55 B.R. 957, 968 (Bkrtcy.E.D. Ill.1985).

■ It is next suggested that it is inappropriate to subtract the amount of the retainer from the total fees which may otherwise be payable from the estate. It is well established, however, that the court has a duty to refund to an estate or a debtor any excess of a retainer which is not justified by the value of services rendered in the course of the bankruptcy proceedings. See Rule 2017 of the Rules of Bankruptcy Procedure; *In re Porter*, 253 F. 552, 553 (7th Cir.1918) (A retainer is paid "by the bankrupt out of his estate in contemplation of bankruptcy, and (is) for services rendered or to be rendered such bankrupt in the matter of his bankruptcy proceedings.") This contention must therefore be rejected.

It is finally asserted that, if the law firm were granted all its fees which it applied for, not only those which would be granted under the prior orders of the court, the total sum due would be $31,702.00 as a second priority expense of administration. See page 2 of "response to order to show cause entered June 27, 1988 and request for stay order pending appeal." According to the above authorities, if this contention is granted, the $15,000 retainer, which does not have a significance independent of legal services rendered in the estate, must be set off against the amount awarded. So, the correct second priority amount is $16,702.00, if the contentions of the objecting law firm are correct. This amount proposes to be granted because of the minimal impact on the estate.

■ The objecting law firm further objects that this court cannot distribute the funds of the estate unless and until an appeal from this court's prior orders denying some of their attorney's fees is determined. But the effect of the within order of distribution is to grant all the contentions of the applicant law firm. If the applicant firm wishes the court to withhold some part of the sum due them, the court will do so on application made by them. But, in order to promote early distribution of the estate, and because of the minimal impact which the attorney's fees have on the estate, the court proposes to grant the above contentions of the law firm as respects the amount due them as a second priority expense. Thus, the prior awards remain unaffected and the court is well within its power in making distribution according to the priorities of the estate. See, e.g., *In re India Wharf Brewery*, 96 F.2d

710, 712 (2d Cir.1938), to the following effect:

"Relying upon the principle that one judge may not overrule the decision of another judge of co-ordinate jurisdiction made in the same case, the appellant argues that Judge Abruzzo had no power to reduce the receiver's commissions as fixed by the order of Judge Campbell. This principle has no application to the facts at bar for two reasons. The first is that Judge Abruzzo did not re-examine the amount of the receiver's commissions as previously determined; his order accepted this amount but directed payment of a pro rata dividend thereon, as upon other expenses of administration, because the estate was insufficient to pay all in full. A second, and more fundamental, reason is that an allowance of compensation is merely an administrative order and as such is always open to reexamination by the bankruptcy court until the estate is closed."

Therefore, the court will direct that the law firm of Campbell, Morgan and Gibson receive $16,702.00 as a second priority expense of administration.

### The objection of Heuer–Williams, Inc.

█ The objection of Heuer–Williams, Inc., is to the effect that the postconfirmation debts incurred without specific authorization of court should not be paid at all in consonance with the reasoning of *Matter of Alafia Land Development Corp.,* 40 B.R. 1 (Bkrtcy.M.D.Fla.1984) ("(O)ne who lends money to a debtor in possession without prior approval of the Court is not even entitled to the status of a general unsecured claim.") As this court has made clear in its prior orders, however, including that of June 28, 1988, the postconfirmation indebtedness was authorized by reason of the order of confirmation expressly providing that an estate remained in existence, thus granting the authority to the debtor to incur indebtedness in the name of the estate. As this court stated in its prior order of June 28, 1988,

"in this case, as previously pointed out, the order of confirmation purports to keep an estate in existence. And, other-

wise, as is pointed out in *In re Tri–L Corporation,* 15 C.B.C.2d 1029, 1033 [65 B.R. 774] (Bkrtcy.D.Utah 1986), section 348(d) of the Bankruptcy Code, which otherwise relegates postconfirmation claims to prepetition status, expressly excepts administrative expense claims."

The court therefore rejects the objection of Heuer–Williams, Inc.

### Order of Distribution

Therefore, in accordance with the foregoing principles, and those contained in the court's other prior relevant orders, it is hereby

ORDERED that within 25 days of the date of filing of this order or within such additional time as the court may grant for good cause shown in writing within the same 25 days the trustee make distribution of the following amounts to the following recipients:

| | |
|---|---|
| Internal Revenue Service | $156,330.43 |
| State tax claims | 13,282.47 |
| trustee's attorney's fees (reserved for later justification) | 40,000.00 |
| wage claims | 29,174.48 |
| salary claims of principals | 55,129.25 |
| Miscellaneous postconversion supplies | 32,823.53 |
| court costs for copying and mailing of order of March 18, 1988 | 15,065.00 |
| Judgment to be paid to the Farmers and Merchants Bank pursuant to show cause order which was not objected to | 6,000.00 |
| postconversion fees of Campbell, Morgan and Gibson, P.C. | 6,335.50 |
| second priority fees of Campbell, Morgan and Gibson, P.C. | 16,702.00 |
| other second priority expense of administration creditors according to the attached schedule | 59,991.95 |

ORDER SETTING HEARING ON "MOTION (OF CAMPBELL, MORGAN AND GIBSON, P.C.) TO RECONSIDER ORDER OF DISTRIBUTION OF FUNDS OF ESTATE ENTERED AUGUST 5, 1988"

This court formerly entered its "order of distribution" of the within chapter 7 estate

on August 5, 1988. The law firm of Campbell, Morgan & Gibson, P.C., has filed a motion for reconsideration of that order, in which the following points are raised.

### Taxes

■ Movants contend that the superpriority classification accorded to federal and state taxes incurred during the chapter 11 reorganization proceedings is erroneous; that the taxes thus incurred should be entitled only to "first priority" status; and that case authority "fails to disclose any court's willingness to grant post/petition/preconversion tax liability the super-priority status granted in the present case." The action which was proposed by this court in its prior orders, however, was based upon the decision in *In re Allen*, 67 B.R. 46, 49 (Bkrtcy.W.D.N.Y.1986), in which it was held that "all postpetition pre-conversion taxes and penalties incurred by the estate are deemed to be of the type enunciated in section 503(b) and will receive a first priority status." This "first priority status" was to be accorded in the chapter 13 proceedings which were the *successor* to the chapter 11 proceedings in which the tax liability was incurred. Thus, by analogy, this court held that unpaid withholding tax obligations, which were incurred during the chapter 11 proceedings were allowable as administrative expenses in a chapter 7 proceeding which succeeded the chapter 11 proceeding.

Even more persuasive authority supporting the according of "superpriority" status to these tax obligations is a case now adverted to in the movants' motion for reconsideration, *In re Patco Photo Corp.*, 82 B.R. 192, 195 (Bkrtcy.E.D.N.Y.1988). In that case, in determining that the Government was entitled to interest on a withholding tax obligation, the court stated as follows:

"An order was signed by the court in the infancy of this case, as is done shortly after the commencement of very Chapter 11 case in this court, directing the debtor-in-possession to segregate and deposit all federal tax liabilities as they become due. Patco did not comply with this directive. Breach of this order is a further

reason to allow the taxing authorities interest for the debtor's noncompliance. "To disallow interest as an administrative expense would be contrary to the desired public policy. The effect of such a holding would be to grant the debtors an interest-free loan at the expense of both the government and the judicial process ... Debtors who fail timely to pay their taxes during their Chapter 11 cases should not be relieved of paying interest on their arrearages as required of all other taxpayers. In fact, the integrity of the bankruptcy system demands that Chapter 11 debtors-in-possession pay their taxes on time. To treat the debtor otherwise would encourage debtors to delay paying their taxes and use the unpaid amounts to fund plans of reorganization. Allowing interest to accrue on post-petition taxes might encourage debtors to propose and confirm plans in a more expeditious manner. Therefore, this court finds that interest on post-petition tax arrearages should be given priority status."

In accordance with that reasoning, the Internal Revenue Service has a right to expect that the judicial process will see that the tax obligations which are incurred during the chapter 11 process will be fully paid. This is especially so when, at the time of the inception of this case, the court required by virtue of local rule 13 that:

"In all cases where the trustee or debtor is permitted to operate, he must immediately deposit in one of the depositories permitted by the Code all monies then held or thereafter received or collected for and on behalf of the United States, the State of Missouri or any political subdivision thereof for excise, entertainment, withholding, social security or unemployment taxes or contributions. The deposit must be made in a separate account designated 'Tax Account.'"

Now to hold that the unpaid withholding tax obligations are relegated to an inferior priority which would mean less than their full payment would be to frustrate the operation and effect of the above local rule and to permit the United States to be vic-

timized in a manner which is not consistent with the provisions of the Bankruptcy Code. These same principles apply to the tax obligations of the State of Missouri. It is appropriate for the tax authorities to be granted a "super-super-priority claim" by reason of "the extreme equities." *In re American Intern. Airways, Inc.*, 77 B.R. 490, 495 (Bkrtcy.E.D.Pa.1987). And this is, for the foregoing reasons, such a case. Accordingly, this court rejects the contention that the tax obligations should not receive "superpriority" treatment.

*Wages and Salary Claims of Principals*

■ Movants next object that the wages and the salary claims of principals cannot be treated as the equivalent of severance pay within the meaning of *Straus–Duparquet, Inc. v. Local No. 3 International Brotherhood of Electrical Workers*, 386 F.2d 649, 650 (2d Cir.1967). In that case, it was held that "(s)everance pay was properly held to be an expense of administration" and "severance pay" was defined as:

"a form of compensation for the termination of the employment relation, for reasons other than the displaced employees' misconduct, primarily to alleviate the consequent need for economic readjustment but also to recompense him for certain losses attributable to the dismissal."

Further, in *Matter of Pacific Far East Line, Inc.*, 713 F.2d 476, 478 (9th Cir.1983), it was observed that the *Straus–Duparquet* rule was to the effect that "severance pay constitutes compensation for the employee's post-filing termination (and accordingly that the court) has allowed all such claims priority as post-filing administrative expense." According to this reasoning, because it appeared that termination of the employees and principals was after the inception of the chapter 7 proceedings, the compensation could be regarded as payment for their termination and could be accounted as postconversion administrative expenses entitled to the superpriority treatment under section 726(b) of the Bankruptcy Code. But it certainly is an issue of fact, to be established by the respective claimants, as to whether the payment can be regarded as the equivalent of severance pay, i.e., payment on account of termination as opposed to earned past wages or salary. Accordingly, the court will set a hearing at which the claimants will be granted an opportunity to make such a demonstration to the court.

### Computation

Finally, the movant law firm points out that this court, in the order of distribution now under challenge, inadvertently subtracted the $15,000 retainer twice from the amount which they would otherwise have received under that order of distribution.[1] The court, in any forthcoming order of distribution, to be entered after the hearing above adverted to, assuming that the wage and salary claims will be relegated to a lower classification (without so holding at this time) proposes to figure the distribution to Campbell, Morgan and Gibson as follows:

Superpriority claim for services rendered after the date of conversion "in aid of administration" of the estate ............ $6,335.50
Priority claim for services rendered in the course of the chapter 11 proceedings ........ $126,522.61[2]
Percentage to be paid to chapter 11 expenses of administration derived by determining ratio of outstanding claims to monies remaining after superpriority expenses of administration have been paid[3] ........... 19.9%

---

**1.** This contention cannot be sustained. The court subtracted the $15,000 from the total distribution which the applicant law firm had arrived at as the amount of the correct distribution. In so doing, the applicant law firm had purported to subtract the sum of $15,000 as "retainer received," but they had also included that sum in the previous subtotal as though it had an independent significance and need not be justified by services provided.

**2.** This sum is taken from the penultimate response to the show cause orders which have previously been issued by the court.

**3.** If the wage claims and the salary claims of principals are not to be included in the "superpriority" category, the amount of second priority claims will be $805,053.71. The amount available for distribution to those claims will be $160,172.26. The percentage to be distributed will therefore be 19.9%

19.9% times $126,522.61 ........ $24,381.99
Total amount of distribution
($24,381.99 plus $6335.50) ........ 30,717.49
subtraction of $15,000 retain-
er received ..................... 15,717.49[4]

Accordingly, it is hereby

ORDERED that a hearing be held on the pending motion with respect to the wage and salary claims of principals on September 13, 1988, at 2:00 p.m. in Room 945, United States Courthouse, 811 Grand Avenue, Kansas City, Missouri.