In re PEACHES RECORDS & TAPES, INC., Debtor.

In re NEHI RECORD DISTRIBUTING, CORP., Debtor.

David A. GILL, Trustee Appellee,

v.

CBS RECORDS, INC., Appellant.

BAP No. CC 88–1719 MoVP.

Bankruptcy Nos. LA 81–06676 WL, LA 81–06677 WL.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted June 14, 1989.

Decided Aug. 2, 1989.

See also, BAP 9th Cir., 51 B.R. 583.

Richard W. Buckner, O'Melveny & Myers, Los Angeles, Cal., for appellant.

Richard K. Diamond, Danning, Gill, Gould, Diamond & Spector, Los Angeles, Cal., for appellee.

Before MOOREMAN, VOLINN and PERRIS, Bankruptcy Judges.

## OPINION

MOOREMAN, Bankruptcy Judge:

This appeal arises out of the bankruptcy court's order granting summary judgment in favor of the appellee/trustee and in doing so, rejecting CBS Records' ("appellant"), claim seeking to recover interest on its allowed superpriority administrative claim. We Affirm.

## FACTS

Peaches Records and Tapes, Inc., ("debtor"), was a retail record merchant with numerous outlets throughout the United States. As security for the debtor's purchase of records and tapes, appellant and the debtor entered into several security agreements creating security interests in the debtor's inventory bearing the CBS Records label and proceeds therefrom.

On June 1, 1981, the debtor filed for a Chapter 11 bankruptcy petition. Appellant asserted a partially secured and partially unsecured claim totalling approximately $5,477,000. Soon after the filing of the debtor's petition, the appellant and the debtor entered into a cash collateral stipulation which was approved by the bankruptcy court. Under the stipulation, appellant was provided as adequate protection, a "replacement lien [which] shall have the same validity, enforceability and priority as the pre-Chapter security interest." This security interest, however, was subordinate to a first priority lien in favor of Citibank.

In the latter part of 1981, the debtors in possession commenced the liquidation of the property of the estates through the sale of its record stores and inventory subject to the appellant's replacement lien. The appellant was aware of the sales which were apparently made with court authorization. The proceeds of the sales (primarily promissory notes), however, were subject to Citibank's senior secured interest and could not be allocated to any particular record supplier claiming a security interest in the debtor's inventory.

In March 1982, the appellee David Gill was appointed Chapter 11 trustee. In or about January 1983, the appellee and the Creditors' Committee commenced lien avoidance litigation against the debtor's major record suppliers including the appellant herein.[1] After extensive litigation and subsequent appeals, eventually a final order was entered in which it was determined that due to the failure of the adequate protection afforded appellant under the cash collateral stipulation, (by the sale of the inventory to third parties), appellant was entitled to a superpriority claim under 11 U.S.C. § 507(b) equal to any deficiency resulting from such failure.[2] This amount was determined to be $1,704,606, a sum equal to the value of appellant's collateral established as of the petition date.[3]

On April 10, 1987, the appellant filed an amended claim seeking as an administrative priority claim, an additional $1,188,388 in interest on its § 507(b) claim. In support of its claim for interest, the appellant relied on *In re American Mariner*, 27 B.R. 1004 (9th Cir. BAP 1983), and argued that interest was justified as a "lost opportunity cost." Eventually, the case was converted to Chapter 7.

After voluntarily dismissing the appeal from the order allowing the initial § 507(b)

claim, the trustee paid the appellant the *principal* amount of the claim, but later filed an objection to the appellant's claim for interest on that amount. By this time, the Supreme Court's decision in *In re Timbers*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), had been handed down and upon a Motion for Summary Judgment, the trustee argued that *Timbers* barred the appellant's claim for interest on its superpriority administrative claim. Additionally, the trustee contended that the doctrines of waiver and res judicata barred the appellant's claim.

On July 14, 1988, a hearing on the Motion for Summary Judgment was held, wherein the bankruptcy court determined that "[a]n undersecured creditor in not entitled to compensation for the delay in enforcing its rights to possession of its collateral, i.e., 'lost opportunity costs.'" (citing *Timbers*, 108 S.Ct. at 635). From this order the appellant timely filed the instant appeal.

## DISCUSSION

### Standard of Review

In reviewing a bankruptcy court's grant of summary judgment, to determine whether there was any issue of material fact, we will consider the facts in the light most favorable to the losing party, and review de novo whether the prevailing party was entitled to judgment as a matter of law. *E.g. Lone Ranger Television v. Program Radio Corp.*, 740 F.2d 718, 720 (9th Cir.1984) (citations omitted).

### Issue

The issue in this appeal is whether an undersecured creditor who is awarded a

---

1. The lien avoidance actions were based on the theory that each defendant's purported security interest in the debtor's inventory was "invalid or valueless" because the secured creditors had not taken an actual inventory or account of their collateral and could, therefore, not establish what property of the estate was subject to each lien, its value, or the identifiable proceeds to which the liens could attach.

2. The order allowing the appellant's § 507(b) superpriority claim is now final and not at issue in this appeal.

3. The bankruptcy court also determined that the value of the inventory subject to the lien of the appellant was less than the amount of the appellant's original $5,477,000 claim and thus the appellant was *undersecured.*

§ 507(b) superpriority claim is also entitled to interest on that claim.[4]

### Merits

The appellant's initial argument is that *Timbers* is distinguishable from the instant case in that the appellant does not seek "lost opportunity costs," but merely the "earnings on money long due." Accordingly, the appellant contends that interest on its § 507(b) superpriority claim may be awarded through the general equitable powers of the bankruptcy court.

The appellee counters with the contention that regardless of the appellant's characterization of the asserted claim for interest, the fact remains that the appellant is merely attempting to be "compensated for the time value of money for the use of its collateral." This concept, the appellee argues, was specifically rejected by the *Timbers* decision.

Both parties rely primarily on the *Timbers* decision. While *Timbers* may be helpful by analogy, it is not dispositive in that it specifically involved the issue of "whether undersecured creditors are entitled to compensation *under 11 U.S.C. § 362(d)(1)* for the delay caused by the automatic stay in foreclosing on their collateral." *Timbers*, 108 S.Ct. at 629.

Accordingly, our analysis is necessarily directed to the language of § 507(b) and other applicable sections of the Bankruptcy Code. *E.g. United States v. Ron Pair Enterprises, Inc.*, —— U.S. ——, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). A principle rule of statutory construction states: "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.'" *Ron Pair Enterprises*, 109 S.Ct. at 1031 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). More specifically, "[b]ecause the presumption in bankruptcy

cases is that the debtor's limited resources will be equally distributed among [its] creditors, *statutory priorities are narrowly construed.*" *Trustees of Amalgamated Insurance Fund v. McFarlin's, Inc.*, 789 F.2d 98, 100 (2nd Cir.1986) (citing *Joint Industry Board v. United States*, 391 U.S. 224, 228, 88 S.Ct. 1491, 1493–94, 20 L.Ed.2d 546 (1968)) (emphasis added). *See also In re Timbers*, 108 S.Ct. at 631. Finally, "if one claimant is to be preferred over others, the purpose should be clear from the statute." *Nathanson v. N.L.R.B.*, 344 U.S. 25, 29, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952).

Given the above principles, we now turn to § 507(b) which provides:

(b) If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, *such creditor has a claim allowable under subsection (a)(1)* of this section arising from the stay of action against such property under section 362 of this title, from the use sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, *then such creditor's claim* under such subsection shall have priority over every other claim allowable under such subsection.

11 U.S.C. § 507(b) (emphasis added). By this language, the § 507(b) claim holder is entitled to the superpriority provided by § 507(a)(1), but such claim is *"limited* to the amount by which the collateral actually decreased in value during the period of administration." *In re Smith*, 75 B.R. 365, 369 (W.D.Va.1987) (citing *In re Callister*, 15 B.R. 521, 529–30 n. 23 (Bankr.D.Utah 1981)) (emphasis added). Thus, nothing in the language of the applicable statutes supports the conclusion that a § 507(b) claim holder is also entitled to an *additional* superpriority claim for *interest* on the decreased value of the collateral.

---

**4.** The appellant contends that because the bankruptcy court erroneously relied on *Timbers* in reaching its conclusion, the court "fail[ed] to consider whether this is an appropriate case for the court to exercise its equitable powers and award interest...." However, this argument appears to be contrary to the court's specific determination that "[appellant] is not entitled to interest under equitable principles."

Additional support for rejecting the appellant's asserted priority claim for interest can be found in the general rule that administrative claims should not include interest as part of such claim. *See e.g. In re Mark Anthony Construction, Inc.,* 78 B.R. 260 (9th Cir. BAP 1987) (interest on priority tax claims was not entitled to priority status); *In re John Clay and Co.,* 43 B.R. 797, 812 (Bankr.D.Utah 1984) (recognizing that there is nothing in the Code providing for the allowance of interest to those holding administrative claims); *In re Fred Swain, Inc.,* 97 B.R. 660 (Bankr.S.D.Fla. 1989) (creditors with administrative priority claim for pension assessments retained by debtor not also entitled to administrative priority claim for interest on said claim). Although the Bankruptcy Appellate Panel has previously recognized a limited exception to this general rule *where the estate is solvent,* such an exception is provided for and supported by § 726(a)(5) of the Bankruptcy Code. *In re San Joaquin Estates, Inc.,* 64 B.R. 534, 536 (9th Cir. BAP 1986). In the instant case, it is undisputed that the estate is insolvent and that allowance of the appellant's claim for interest on a priority basis will reduce the dividend to unsecured creditors.

Appellant relies heavily on the case of *In re American International Airways, Inc.,* 77 B.R. 490 (Bankr.E.D.Pa.1987), wherein the bankruptcy court determined that although interest was not generally allowed on a priority basis for administrative claims, "in certain extraordinary circumstances,"[5] such interest might be allowed. *Id.* at 495. In the *American International* case, however, there is no indication of whether the estate was solvent and in the absence of this key factor, the appellant's reliance on the case is dubious.

Finally, appellant's claim for priority status on interest from the § 507(b) claim is contrary to the "general rule disallowing postpetition interest" to undersecured creditors. *E.g. Timbers,* 108 S.Ct. at 631 (discussing the explicit language of § 506(b)). Under § 506(b), *secured* creditors are entitled to interest on their claim only to the extent of their collateral or in other words, "only out of the 'security cushion.'" *Timbers,* 108 S.Ct. at 631. *See also Ron Pair Enterprises,* 109 S.Ct. at 1029–30.

In doing so, the Supreme Court recognized that it would be "unfair to allow undersecured creditor[s] to recover interest from the estate's unencumbered assets before unsecured creditors had recovered any principal." *Timbers,* 108 S.Ct. at 631. As previously set forth, the appellant contends that it is equitably entitled to the income from its "collateral" and, thus, it is not seeking to recover interest from unencumbered assets. This argument, however, mischaracterizes the nature of the appellant's § 507(b) claim which was merely a claim *measured by the decrease in the value* of the appellant's collateral.

Although appellant implicitly argues that its claim is "collateralized," the appellant is unable to point to applicable authority to support such reasoning. Thus, it cannot be disputed that any priority payments on appellant's claim for interest will be from "unencumbered assets." It can only be assumed that Congress recognized this distinction by providing such claims with "super priority status" and at the same time making no allowance for interest on § 507(b) priority claims.[6]

In light of the foregoing, the result sought by the appellant is contrary to the Bankruptcy Code, relevant case law and the recognized notion of ratable distribution of the estate. *Timbers,* 108 S.Ct. at

---

**5.** The *American International* court determined that sufficient "extraordinary circumstances" existed where the debtor had "defrauded" the administrative claimant in the underlying agreement giving rise to the administrative claim. *American International,* 77 B.R. at 495. The *American International* decision is further distinguishable from the instant case in that the Federal District Court had previously ordered that the administrative claimant be paid "out of

the first available unrestricted funds of the estate." *Id.* at 492. Such "extraordinary circumstances" are not present in the instant case.

**6.** The bankruptcy court's order denying the appellant's claim as an *administrative priority claim* would not preclude the appellant from seeking an unsecured claim for the interest now sought.

631. Accordingly, the bankruptcy court's order granting partial summary judgment for the trustee is AFFIRMED.