In re FAR WEST CORPORATION OF SHASTA COUNTY, a California Corporation dba Better Buy Market No. 1 and No. 2, Debtor.

Bankruptcy No. 287–02332–B–11.
Motion No. DKC–1.

United States Bankruptcy Court,
E.D. California.
Sacramento Division.

Oct. 17, 1990.

---

2. This below-market rent is a subsidy by Ford to Greenspan as a Lincoln–Mercury dealer.

Dennis K. Cowan, Redding, Cal., for creditor Topland Company, Inc., a California Corp., and its successor Judith Ann Wilson.

Matthew J. Goldman, Weintraub, Genshlea, Hardy, Erich & Brown, Sacramento, Cal., for debtor Far West Corp. of Shasta County.

## MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM

DAVID E. RUSSELL, Bankruptcy Judge.

### MEMORANDUM OF DECISION

The foregoing motion was brought regularly before this court by Judith Ann Wilson ("Wilson"), trustee of the Dick Wilson 1988 Trust which is the successor in interest to the Topland Company, Inc. (hereinafter "Topland"), debtor Far West Corporation's ("Debtor") landlord. Wilson seeks an order requiring the Debtor to pay as administrative expenses (11 U.S.C. § 503(b)(1)) outstanding postpetition rents owed to Topland in the amount of $11,134.51, interest thereon at 10% per annum from the date of accrual, and attorneys fees in the minimum amount of $1,560.00 incurred while bringing this motion.

At the initial hearing on this matter on April 3, 1990, the court found that postpetition rents in the amount of $11,134.51 were owed to Topland as an administrative expense for the period between the filing of the bankruptcy petition (4/24/87) and the time the Debtor actually quit the premises (9/12/87).[1] The court deferred ruling on the issues regarding the propriety of awarding interest and attorneys fees as well as the proper application of a $5,000.00 security deposit paid by Debtor to Topland at the commencement of the lease (4/24/75) pending further briefing and argument by the parties.

### i] PROPER APPLICATION OF "SECURITY DEPOSIT"

The parties are in agreement that a security deposit generally cannot be applied against a landlord's postpetition administrative rent claim but, rather, must be applied against any prepetition, unsecured claim the landlord might have against the debtor/tenant. (H.Rept.No. 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977), pp. 353, 355, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6308, 6310; 3 *Collier on Bankruptcy* (15th Ed.1989), ¶ 502.02[7], pp. 502-62.1 to 64).[2] The Debt-

1. The court now reaffirms that decision. (*See, In re Dant & Russell, Inc.,* 853 F.2d 700, 707 (9th Cir.1988) (Although ordinarily any claim arising during the period between the filing of the bankruptcy petition and the date of rejection of the lease would be treated as arising prepetition pursuant to 11 U.S.C. § 365(g)(1), to the extent the trustee actually uses leased property, the rent incurred is an allowable administrative expense), citing 2 *Collier on Bankruptcy,* (15th Ed.1986), ¶ 365.08; *In re Cochise College Park, Inc.,* 703 F.2d 1339, 1354 (9th Cir.1983)).

2. Although the motion before the court is not one under 11 U.S.C. § 553 ("setoff"), the court agrees that the element of mutuality of debts

or argues, however, that the deposit was in fact one for the payment of the last two rental payments due under the lease and, as such, would be susceptible to an offset against Topland's postpetition claims.

 Having considered the plain language of the lease agreement, however, this court has determined that the intent of the parties was that the deposit be credited towards the last two months of payments only if and to the extent that the Debtor was not in arrears or otherwise in default of the terms of the lease.[3] Specifically, therefore, the court finds that the deposit was primarily intended as security against default but that to the extent it was not so used would be available as an offset against the final two months worth of payments called for under the lease agreement. Because of Debtor's substantial prepetition defaults[4] the option to so utilize the security deposit necessarily lapsed. Consequently, this security deposit is properly applicable to the outstanding prepetition rentals incurred by Far West.

ii] *ALLOWANCE OF INTEREST ON ADMINISTRATIVE CLAIMS*

It is well-settled that, generally, the accrual of interest will be suspended upon the filing of a petition in bankruptcy. (3 *Collier on Bankruptcy* (15th Ed.1989), ¶ 502.02[2] at p. 502–30; *Sexton v. Dreyfus*, 219 U.S. 339, 344, 31 S.Ct. 256, 257, 55 L.Ed. 244 (1911); *Matter of Beverly Hill*

*Bancorp*, 752 F.2d 1334, 1339 (9th Cir. 1984)). One exception to the general rule is provided by 11 U.S.C. § 726(a)(5) in the rare situation when the assets of a Chapter 7 estate exceed the claims against it. 11 U.S.C. § 506(b) provides another exception in the case of oversecured claims. It is also now settled in this judicial circuit that accrued interest on postpetition taxes may be allowed and given first priority status as an administrative expense. (11 U.S.C. § 503(b)(1)(C); *In re Mark Anthony Construction, Inc.*, 886 F.2d 1101, 1106 (9th Cir.1989))[5].

Finally, the courts have recognized that "... the exceptions to the denial of postpetition interest 'are not rigid doctrinal categories [but] are flexible guidelines which have been developed by the courts in the exercise of their equitable powers in insolvency proceedings'" (*United States v. Ron Pair Enterprises*, 489 U.S. 235, 248, 109 S.Ct. 1026, 1034, 103 L.Ed.2d 290, 303 (1989) citing, *In re Boston & Marine Corp.*, 719 F.2d 493 (1st Cir.1983); *See also, Matter of Beverly Hills Bancorp*, 752 F.2d 1334 (award of postpetition interest is dependent upon the equities of the bankruptcy case)). Thus, post-petition interest on administrative claims is not necessarily limited to holders of tax claims.

This court is aware of only one circuit court case, *In re Brooks & Woodington, Inc.*, 505 F.2d 794, 799 (7th Cir.1974), which

necessarily affects this analysis. (*See generally,* 4 *Collier on Bankruptcy* (15th Ed.1989), ¶ 553.08, pp. 553–40 et seq.). Consequently, the characterization of the deposit is pivotal in determining which claim (postpetition administrative versus prepetition unsecured) may be offset by the subject deposit. (*Compare,* 4 *Collier on Bankruptcy* (15th Ed.1989), ¶ 553.04, pp. 553–23, nt. 23 (landlord may normally "set off" a security deposit against its claim for prepetition rent) with *In re Orangebrook Concessions, Inc.,* 47 B.R. 858, 860 (Bkrtcy.S.D.Fla.1985) (no mutuality between prepaid "last month's rent" and creditor's prepetition unsecured claim for rents, consequently, no right to offset)).

3. The pertinent provisions of the lease agreement are as follows:
 "In the event lessee has paid the rental hereunder, as herein provided, and has duly complied with the terms and provisions hereof, Les-

see may occupy and enjoy the leased premises for the final two months of the term, free from obligation to pay any rental for such two months. If and providing, the $5,000.00 paid and acknowledged herein is sufficient to cover two monthly rental payments. (sic) The $5,000.00 shall be credited to and or applied to the total payment of the last two months of the term of this lease."

4. According to the declaration of Judith Wilson filed in support of the present motion, Debtor owed prepetition rents of $20,912.00 as of the filing of its bankruptcy petition.

5. The Ninth Circuit Court of Appeals found in the case of *Mark Anthony Construction* that postpetition "interest" was properly classified and treated as an allowed administrative expense under subsection (b)(1)(C) of 11 U.S.C. § 503 notwithstanding Congress' failure to expressly include it in the list of allowed expenses.

has definitively ruled upon the allowability of interest on an unpaid administrative expense. After acknowledging the paucity of case law on point, the *Brooks* court held under the Bankruptcy Act [predecessor to the 1978 Reform Act] that the applicant (an accounting firm) was not entitled to recover interest on its allowed administrative claim for fees and costs. The court divined the foregoing conclusion by drawing an analogy to the principals and policies surrounding the general rule regarding the suspension of interest on prepetition claims. (*Supra*).[6]

Of course, at issue *sub judice* is the question of interest on postpetition administrative claims which involves entirely different policy considerations than would be considered when ruling upon the propriety of paying postpetition interest on prepetition claims. The rationale for according certain postpetition claims priority status was to prevent the reorganization or administration of the estate from being jeopardized by a creditor's refusal to deal with the debtor postpetition (*In re Cochise College Park, Inc.*, 703 F.2d 1339, 1355 (9th Cir.1983)), while the policy considerations behind the general rule suspending the accrual of interest on prepetition claims were premised upon notions of equity[7] and administrative convenience[8]. (*Nicholas v. United States*, 384 U.S. 678, 682, 86 S.Ct. 1674, 1678, 16 L.Ed.2d 853 (1966)). Consequently, this court declines to follow either the reasoning or result of the *Brooks & Woodington, Inc.* case.[9]

Surveying the lower court decisions, the court notes that several post 1978 Reform Act courts have since relied upon *Brooks & Woodington* to support their conclusion that interest should not accrue on administrative claims. (*See, e.g., In re Fred Swain, Inc., supra*, 97 B.R. 660, 661–62 (no manifestation of Congressional intent to allow interest on administrative claims); *In*

---

**6.** The court did note that "a different situation might exist if the estate were solvent." (Citing 8A C.J.S. Bankruptcy § 422).

**7.** The Supreme Court remarks in *Nicholas v. United States* that "[i]n the context of interest-bearing debts, the equitable principle enunciated [above] in [*Sexton v. Dreyfus*, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244] and [*New York v. Saper*, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710] rests at bottom on an awareness of the inequity that would result if, through the continuing accumulation of interest in the course of subsequent bankruptcy proceedings, obligations bearing relatively high rates of interest were permitted to absorb the assets of a bankrupt estate whose funds were already inadequate to pay the principal of the debts owed by the estate". (*Infra*, at 384 U.S. at 683–84, 86 S.Ct. at 1679).

**8.** *See, Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 164, 67 S.Ct. 237, 91 L.Ed. 162, 166 ("Accrual of simple interest on unsecured claims in bankruptcy was prohibited in order that the administrative inconvenience of continuous recomputation of interest causing recomputation of claims could be avoided").

**9.** On a related note, the Ninth Circuit Bankruptcy Appellate Panel ("B.A.P.") recently ruled that an undersecured creditor who had been awarded § 507(b) "superpriority" status was not entitled to interest on that claim. (*In re Peaches Records & Tapes, Inc.*, 102 B.R. 193 (9th Cir.B.A.P.1989)). In arriving at that conclusion, B.A.P. found support in the "general rule that administrative claims should not include interest as part of such claim", citing *In re Mark Anthony Construction, Inc.*, 78 B.R. 260 (9th Cir.B.A.P.1987) [Rev'd, 886 F.2d 1101, 1106 (9th Cir.1989) ], *In re John Clay and Co.*, 43 B.R. 797, 812 (Bankr.D. Utah 1984); *In re Fred Swain, Inc.*, 97 B.R. 660 (Bkrtcy.S.D.Fla.1989). (102 B.R. at 196). The Panel also referenced an earlier B.A.P. decision for the proposition that there is a "limited exception to [the] general rule where the estate is solvent ..." (*Id.*, (emphasis in original) citing *In re San Joaquin Estates, Inc.*, 64 B.R. 534, 536 (9th Cir.B.A.P.1986) [a case which, incidentally, involved an award of postpetition interest on a prepetition claim] ). Finally, B.A.P. noted that the creditor's reliance upon *American International Airways* (*infra* ) in support of its position for postpetition administrative interest was "dubious" because there was no indication in that case to prove whether or not the estate was solvent. (*Ibid.*).

Although it is not clear whether the B.A.P. would feel compelled to modify its position in light of the subsequent reversal of *Mark Anthony Construction* by the Ninth Circuit Court of Appeals, the discussion of the law controlling interest on administrative claims by the *Peaches Records & Tapes* court is clearly dicta and, while instructive, is not binding upon this court. Further, although the ultimate holding of *Peaches Records & Tapes* is helpful by analogy, it is not dispositive as the issue before us involves the allowance of interest on an administrative as opposed to an undersecured claim; two completely distinct concepts which involve two entirely different statutes, each with their own policy considerations.

*re Goldblatt Bros., Inc.*, 61 B.R. 459 (Bkrtcy.N.D.Ill.1986) (*in accord*)). A second line of cases have allowed interest to accrue on allowed administrative claims, but only where authorized by express statutory or contractual authority. (*See, e.g., In re Churchill*, 109 B.R. 863, 864–65 (Bkrtcy.S.D.Ill.1990); *In re American International Airways, Inc.*, 77 B.R. 490, 494–95 (Bkrtcy.E.D.Pa.1987) (interest can be included as part of an administrative claim where debtor agreed to pay such interest in a postpetition contract)). Finally, there is yet a third line of cases which allow interest to accrue upon postpetition administrative claims based upon strict notions of equity. (*See, e.g., In re Mesa Refining, Inc.*, 66 B.R. 36, 37–38 (Bkrtcy.D. Colo.1986) (interest at statutory rate is "integral part" of underlying reclamation debt and, consequently, allowable)).

One problem with all three lines of cases is that little consideration is given to the statute which authorizes payment of administrative expenses. 11 U.S.C. § 503(b)(1) provides that:

(b) [a]fter notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual necessary costs and expenses of preserving the estate, *including* [10] wages, salaries, or commissions for services rendered after the commencement of the case;

(B) any tax

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title ...

(C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph. (Emphasis added).

As so succinctly stated by the Ninth Circuit in the case of *In re Dant & Russell, Inc.;* "[11 U.S.C. § 503(b)] is explicit. Any claim for administrative expenses and

costs must be the actual and necessary costs of preserving the estate for the benefit of its creditors. [citations omitted]. The terms 'actual' and 'necessary' are construed narrowly so as ·'to keep fees and administrative costs at a minimum.' [citations]. An actual benefit must accrue to an estate. [citations]" (*Supra*, 853 F.2d 700, 706).

Thus, the proper litmus test for determining the propriety of interest as an administrative expense should be one which strikes a balance between the foregoing requirement that administrative expenses constitute the "actual and necessary costs of preserving the estate" and the Supreme Court's referenced admonition that "exceptions to the denial of post-petition interest [be] 'flexible guidelines ... developed by the courts in the exercise of their equitable powers ...'" (*United States v. Ron Pair Enterprises, supra*, 489 U.S. 235, 248, 109 S.Ct. 1026, 1034, 103 L.Ed.2d 290, 303). This test necessarily requires a case by case factual analysis.

■ Topland argues, *inter alia*, that interest is appropriate "since nothing filed by the debtor-in-possession herein shows that the debtor-in-possession was unable to pay the rent or that at the time the rent was due, the estate was in fact insolvent".[11] (Reply Memorandum of Points and Authorities, filed 4/2/90, at p. 4, lines 22–26). In fact, a Ninth Circuit Bankruptcy Appellate Panel has recently observed that

[t]he enactment of section 365(d)(3) reflects a policy choice comparable to that of section 331. Congress clearly envisioned that debtor-tenants would 'pay their rent, common area, and other charges on *time* pending the trustee's assumption or rejection of the lease.' In light of this strong expression of legislative intent, [we] must conclude that a nonresidential lessor's administrative expense claim arising under section

---

**10.** 11 U.S.C. § 102(3) [Rules of Construction] specifically provides that "'includes' and 'including' are not limiting".

**11.** Of course, the Claimant has the burden of establishing his or her entitlement to an admin-

istrative award. (*See, Matter of Baldwin–United Corp.*, 79 B.R. 321, 336 (Bkrtcy.S.D.Ohio 1987) (citing cases). Nonetheless, as noted below the Debtor's sworn schedules and monthly reports corroborate Topland's factual contentions.

**556**

365(d)(3) should be paid immediately unless the trustee establishes good cause for withholding the payment. (*In re Orvco, Inc.*, 95 B.R. 724, 728 (9th Cir.BAP 1989), quoting *In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969, 973 (Bankr.E.D.Pa.1987)).

A review of the Debtor's schedules and operating reports satisfies this court that the Debtor's estate has at all relevant times contained sufficient funds to satisfy all administrative expense claims in full. This being the case, Topland's § 365(d)(3) administrative rent claim should have been paid "immediately" when due within the 60 day grace-period. Because those rents were not timely paid and because the estate presumptively benefited from the unrestricted use of said funds, interest shall accrue at the legal rate of 7% per annum on the principal amount of $4,876.46 (2 monthly rental payments) from the date the lease was deemed rejected (June 23, 1987) to the date Debtor's plan of reorganization was confirmed (October 27, 1989).

There being no equivalent mandate to § 365(d)(3) for the immediate payment of post-rejection administrative rents other than those which accrued within the 60 day rejection period nor any explanation of why Topland waited until almost five months following plan confirmation to demand payment of its accrued administrative claims, all other claims for interest shall be denied.

### iii] *ALLOWANCE OF ATTORNEY'S FEES UNDER 11 U.S.C. § 503(b)(1)*

■ Topland bases its request for attorney's fees solely upon a contractual provision in the written lease agreement rather than under any of the pertinent provisions in 11 U.S.C. §§ 503(b)(3), (b)(4). Again, all claims which arise under the breached lease agreement will generally be deemed to have arisen prepetition (§§ 365(g)(1), 502(g)). Topland has offered no explanation as to how the allowance of these fees either benefited the estate or otherwise constituted actual, necessary costs of pres-

ervation. Indeed, Topland and its successors in interest have been the only apparent beneficiaries of Mr. Cowan's efforts. Consequently, Topland's request for attorney's fees as part and parcel of its allowed administrative rent claim shall be denied.

### DISPOSITION

For the foregoing reasons the court reaffirms its prior oral order of April 3, 1990 allowing Topland's postpetition rent claim as an allowed administrative expense in the amount of $11,134.51, such claim to be paid immediately by the Debtor from any available funds. Further, Topland may apply (if it has not done so to date) the $5,000.00 security deposit against its unsecured claim. Finally, Topland's request that interest and attorney's fees be included as a component of its allowed administrative rent claim will be denied except as to interest on the $4,876.46 in rents which accrued within 60 days following the filing of the Debtor's bankruptcy petition which shall accrue at the legal rate of 7% per annum [12] from June 23, 1987 to October 27, 1989.

The foregoing shall constitute this court's findings of fact and conclusions of law where appropriate. Counsel for Topland and its successors in interest shall forthwith prepare and submit an order consistent with the above memorandum.

---

**12.** California Constitution, Article XV, § 1, added June 8, 1976, amended June 6, 1978 and

November 6, 1979.